# United States Court of Appeals
## For the First Circuit

No. 22-1157

UNITED STATES OF AMERICA,

Appellee,

v.

HENRI SALVADOR GUTIERREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Stephen Super, with whom George F. Gormley was on brief, for appellant.

Mark T. Quinlivan, Assistant United States Attorney, with whom Joshua S. Levy, United States Attorney, was on brief, for appellee.

August 29, 2023

**MONTECALVO**, **Circuit Judge**. In this sentencing appeal, Henri Salvador Gutierrez asserts that the United States District Court for the District of Massachusetts erred in imposing a sentencing enhancement for the use or attempted use of a minor in the commission of the offense under the United States Sentencing Guidelines ("Guidelines"). See U.S.S.G. § 3B1.4 ("If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels."). On appeal, Salvador Gutierrez argues that the district court erred (1) in applying the enhancement based on the reasonably foreseeable use of minors by coconspirators; (2) in applying the enhancement based on Salvador Gutierrez's affirmative actions to use and involve minors in the commission of the offense; and (3) in creating an unwarranted sentencing disparity when it applied the minor-use enhancement to him. Because Salvador Gutierrez's argument relative to the first issue is foreclosed by the law of the circuit doctrine, he waived his argument relative to the second issue, and his remaining argument is without merit, we affirm the challenged sentence.

## I. Background

The parties do not dispute the underlying facts. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged

portions of the presentence investigation report . . . , and the record of the disposition hearing." United States v. Rijos-Rivera, 53 F.4th 704, 706 (1st Cir. 2022) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

In October 2019, a federal grand jury returned a first superseding indictment charging Salvador Gutierrez, alongside five codefendants, with participation in a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy. The indictment alleged that Salvador Gutierrez was "employed by and associated with" MS-13[1] and that on or about July 30, 2018, he and others deliberately murdered Herson Rivas. On May 20, 2021, the government filed a superseding information, adding the allegation that Salvador Gutierrez, with others, deliberately murdered Luis Orellano Ruano on or about December 24, 2016.

On June 4, 2021, Salvador Gutierrez pled guilty to one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d). In doing so, he admitted to murdering Rivas and Ruano.

The probation office prepared a presentence investigation report ("PSR") for Salvador Gutierrez. In calculating the base offense level for the RICO conspiracy, the PSR treated the Rivas murder and the Ruano murder as if they were

[1] La Mara Salvatrucha, also known as MS-13, "is a transnational criminal organization based in El Salvador." United States v. Sandoval, 6 F.4th 63, 73 (1st Cir. 2021).

separate counts of conviction. See U.S.S.G. § 2E1.1, Application Note 1 ("Where there is more than one underlying offense [to a RICO conviction], treat each underlying offense as if contained in a separate count of conviction for the purposes of" determining the base offense level.). The PSR assigned a base offense level of 43 for each count of conspiracy to murder. However, for conspiracy to murder Rivas, the PSR added a two-level enhancement, pursuant to U.S.S.G. § 3B1.4, for using a minor "to commit the offense or assist in avoiding detection of, or apprehension for, the offense." Application of the minor-use enhancement resulted in an adjusted offense level of 45 for conspiracy to murder Rivas.

Applying a multi-count adjustment, the PSR calculated a combined adjusted offense level of 47. See U.S.S.G. § 3D1.4. That number was reduced by three levels for "acceptance of responsibility," for a total offense level of 44. See id. § 3E1.1(a), (b). The total offense level of 44 was treated as an offense level of 43. See id. ch. 5, pt. A, Application Note 2 ("An offense level of more than 43 is to be treated as an offense level of 43."). The total offense level, combined with Salvador Gutierrez's criminal-history category, resulted in an advisory-sentencing range of life imprisonment.

Salvador Gutierrez raised several objections to the PSR. As is relevant here, he objected to the PSR's recommended two-level increase for minor use, maintaining that he did not "use" a minor

in the murder of Rivas because he did not direct or lead a minor during the commission of the crime. Probation responded that as an older and higher-ranking member of MS-13, Salvador Gutierrez likely had influence over juveniles such that he encouraged and used them in his criminal activities. Relying on United States v. Patrick, 248 F.3d 11 (1st Cir. 2001), probation also noted that the minor-use enhancement can be based on the reasonably foreseeable use of a minor by a codefendant. Thus, probation contended, even if Salvador Gutierrez did not personally use a minor, it was reasonably foreseeable that his codefendants would use minors to further MS-13's activities.

Salvador Gutierrez also filed a sentencing memorandum which, among other things, argued that the minor-use enhancement was inapplicable and therefore his total offense level should be 42. A total offense level of 42 would result in an advisory-sentencing range of 360 months to life imprisonment. See U.S.S.G. ch. 5, pt. A. Ultimately, Salvador Gutierrez asked the district court to impose a sentence of 400 months.

For its part, the government asked for life imprisonment. The government argued that a life sentence was appropriate under the 18 U.S.C. § 3553(a) sentencing factors because Salvador Gutierrez "brutally killed two teenagers," "showed little remorse for his crimes," and exhibited "deplorable conduct while in pretrial custody." In response to Salvador

Gutierrez's sentencing memorandum, the government argued that the minor-use enhancement applied because "Salvador [Gutierrez] personally associated with multiple minors as part of the charged racketeering conspiracy." In support, the government argued that Salvador Gutierrez recruited a juvenile to the gang and "committed the July 2018 murder [of Rivas] with a juvenile." Relying on Patrick, the government also maintained that the minor-use enhancement could be based on the reasonably foreseeable use of juveniles by coconspirators and that Salvador Gutierrez "knew that the gang would use a minor to further the gang's activities."

In preparing to schedule sentencing for Salvador Gutierrez and his codefendants, the district court indicated that its first task was to correctly calculate the guidelines range and then to impose a sentence based on the sentencing factors described in 18 U.S.C. § 3553(a). Salvador Gutierrez continued to argue that the minor-use enhancement was not applicable to him because he did not affirmatively involve a minor in the commission of the Rivas murder. Salvador Gutierrez also directly attacked the validity of Patrick, arguing that several other circuits have rejected Patrick's reasonably foreseeable approach in favor of applying the minor-use enhancement only when a defendant, by some affirmative act, uses a minor participant in the crime.

The district court subdivided the sentencing hearing into two parts. It began with hearings on February 7 and 8, 2022,

as to the contested portions of the PSR that impacted calculation of the guidelines range. At sentencing, the district court overruled Salvador Gutierrez's objection regarding the minor-use enhancement and found that the enhancement applied to Salvador Gutierrez and his codefendants because "each defendant used a person under 18 to commit the offense."

The district court also found that Salvador Gutierrez directed a minor during the Rivas murder by telling the minor to "move over."[2] The district court then turned to whether the minor-use enhancement could also be properly applied under Patrick's reasonably foreseeable test. The district court concluded that each defendant "knew . . . and foresaw that minors would be used in the ongoing commission" of the RICO conspiracy and that, therefore, application of the minor-use enhancement was also proper under Patrick.

Despite concluding that the minor-use enhancement was applicable, the district court reiterated that the court's application of the enhancement would not affect the ultimate

[2] The district court also found that Salvador Gutierrez personally used a minor by recruiting the minor to MS-13. Specifically, the court found that Salvador Gutierrez participated in the recruitment process of the minor by (1) talking to them about MS-13's mode of operating; (2) showing them a video of MS-13 activity; and (3) beating them as part of the gang-training process.

sentence imposed, which would be driven by the § 3553(a) factors.[3] However, the court recognized the government's position that the application of the enhancement should factor into the ultimate sentence and reserved on deciding the question until sentencing. A few days later, on February 11, 2022, the district court entered an order directing the parties to be prepared to address at sentencing "whether the use of a minor as part of the RICO conspiracy to which each defendant pled guilty is material to what

[3] We pause here to dispel one additional argument advanced by Salvador Gutierrez: that the district court impermissibly believed itself bound to apply the minor-use enhancement. This argument misunderstands the law and misconstrues the district court's ruling regarding its obligation to correctly calculate the guidelines range versus its discretion to fashion a sentence that is no more than necessary to serve the statutory purposes of sentencing.

Indeed, it is incumbent upon the district court to begin by determining what the advisory guidelines range is by calculating the offense level and the criminal history category. Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904 (2018) ("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." (quoting Peugh v. United States, 569 U.S. 530, 541 (2013))). The offense level includes adjustments that "account for circumstances specific to the defendant's case," id., such as the minor-use enhancement. Once the advisory-sentencing range is determined, the district court must then consider the § 3553(a) factors in selecting the appropriate sentence. United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013) ("[O]nce the [guidelines range] is properly calculated, 'sentencing becomes a judgment call' involving an intricate array of factors." (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008))).

The record before us clearly indicates that this is exactly what the district court did by first calculating the guidelines range and then selecting a sentence in consideration of the § 3553(a) factors.

sentence is sufficient and no more than necessary . . . in order to serve the statutory purposes of sentencing."

On February 16, 2022, the court convened a sentencing hearing. The district court confirmed that application of the minor-use enhancement raised Salvador Gutierrez's guidelines range to life imprisonment, and Salvador Gutierrez again objected to application of the enhancement.

After hearing the arguments of counsel and Salvador Gutierrez's allocution, the district court imposed a sentence of life imprisonment. The court considered the § 3553(a) sentencing factors and, while recognizing the hardships of Salvador Gutierrez's upbringing in El Salvador, concluded that Salvador Gutierrez willingly joined MS-13 and participated in two murders. The court gave detailed descriptions of its reasoning with respect to several of the § 3553(a) factors, including the seriousness of the crime: two murders committed two years apart. The court recognized the need for the sentence to "afford adequate deterrence" by sending a message "to members and prospective members of MS-13 [that] it's not worth it to kill people, to kill several people." The court acknowledged that the "primary purpose" of the sentence was to protect the public from further crimes that Salvador Gutierrez might commit, as it found that Salvador Gutierrez was still an "extremely dangerous person."

The district court further explained that it had "searched to see whether there [was] really anything in view of all the factors that weigh in favor of a life sentence that weighed sufficiently in favor of a lower sentence, and [it] couldn't find them." This timely appeal followed.

## II. Discussion

Salvador Gutierrez contends that his sentence must be vacated because the district court erred in applying a guideline enhancement under U.S.S.G. § 3B1.4 for Salvador Gutierrez's use or attempted use of a minor. Salvador Gutierrez first argues that the district court erred in applying the minor-use enhancement based on his coconspirators' reasonably foreseeable use of minors to engage in violent crimes in furtherance of MS-13's activities. He also challenges the finding that directing a minor to "move over" during the Rivas murder constituted "use" of a minor. Lastly, Salvador Gutierrez contends that the district court's application of the minor-use enhancement was "arbitrary and capricious," thereby resulting in a disparity between his sentence and those of other MS-13 members. We address these claims seriatim.

### A. Challenge to the Correctness of Patrick

Salvador Gutierrez first argues that the minor-use enhancement should not be applied based on coconspirators' reasonably foreseeable use of minors to further the conspiracy's

activities. Because Salvador Gutierrez preserved this claim of procedural error, we review de novo the sentencing court's interpretation and application of the Guidelines.[4] See United States v. Brown, 26 F.4th 48, 65 (1st Cir. 2022).

Salvador Gutierrez contends that the minor-use enhancement should be read as "an individual role-in-the-offense enhancement" that requires the defendant to take an affirmative act to involve a minor in the commission of criminal activity. In the same breath, however, Salvador Gutierrez acknowledges that reading the Guidelines as he invites us to would require us to overturn Patrick. Patrick's holding that the minor-use enhancement may be applied based on coconspirators' reasonably foreseeable use of juveniles to further the conspiracy's activities is the law of this circuit. See Patrick, 248 F.3d at 27-28. This circuit precedent thus forecloses Salvador Gutierrez's argument.

"The law of the circuit doctrine requires this court (and, by extension, all lower courts within this circuit) to respect, in the absence of supervening authority, the decisions of prior panels on the same issue." Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 125 (1st Cir. 2016). There are

---

[4] Salvador Gutierrez challenges the correctness of Patrick, but he does not challenge the district court's factual finding that it was reasonably foreseeable that coconspirators would use or attempt to use a minor in the commission of the RICO conspiracy.

"hen's-teeth-rare" exceptions to this rule, United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)), but no exception applies here.

The exception to the law of the circuit doctrine that Salvador Gutierrez rests his argument on is when a defendant shows that subsequent authority, "although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Id. Salvador Gutierrez presents us with the opinions of certain of our sister circuits, which have held that the minor-use enhancement can be applied only against a defendant who, themselves, took affirmative actions to involve minors in the criminal activity. See e.g., United States v. Acosta, 474 F.3d 999, 1002 (7th Cir. 2007) (adopting the view of the Third, Tenth, Ninth, and Sixth Circuits that "the enhancement applies only when the defendant by some affirmative act helps to involve the minor in the criminal enterprise").

Fatal to Salvador Gutierrez's contention is that this exception to the law of the circuit doctrine "applies when Supreme Court precedent . . . provides a clear and convincing basis to believe that the earlier panel would have decided the issue differently." United State v. Guerrero, 19 F.4th 547, 552 (1st Cir. 2021) (emphasis added). Salvador Gutierrez has not presented

us with any Supreme Court precedent that would provide a basis for overturning Patrick and free this panel from the constraints of the law of the circuit doctrine.

Yet again, we recognize the divergent views of our sister circuits "on whether the enhancement must be based on a defendant's own affirmative actions or whether it can be applied based on a coconspirator's reasonably foreseeable use of a minor, and that this court has already weighed in on this debate." United States v. Corbett, 870 F.3d 21, 34 n.16 (1st Cir. 2017) (internal citation omitted). However, adhering to our precedent, we find that the district court did not err in ruling that the minor-use enhancement may be applied based on coconspirators' reasonably foreseeable use of juveniles.

**B. Challenge to the Affirmative Use of a Minor**

For the first time in his reply brief, Salvador Gutierrez argues that the district court erroneously found that telling a minor to "move over" during the commission of the Rivas murder constitutes "use" of a minor for purposes of U.S.S.G. § 3B1.4. Indeed, Salvador Gutierrez made no such argument before the district court, and, on appeal, he declined to place it in his opening brief (which instead focuses on Patrick). Only in his reply brief does he attempt to argue that the "move over" directive does not qualify for application of the minor-use enhancement.

"Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief." Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015). Any argument about whether telling a minor to move over during the commission of the Rivas murder qualifies as an affirmative action to involve minors in the offense was available to Salvador Gutierrez "at the outset but raised for the first time in [his] reply brief." United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018). Because this issue was not properly preserved, we do not address it. United States v. Cascella, 943 F.3d 1, 8 (1st Cir. 2019).[5]

**C. Sentencing Disparity Claim**

We end on Salvador Gutierrez's final claim, which is that the district court created an unwarranted sentencing disparity when it applied the minor-use enhancement to him. He argues that the minor-use enhancement is applied arbitrarily and capriciously across MS-13 defendants, often applied to one defendant but not another. In support, Salvador Gutierrez points

---

[5] Another argument making its first appearance before us in the reply brief is Salvador Gutierrez's objection to the district court's use of hearsay statements from confidential witnesses. He made no such argument before the district court, and, on appeal, only in his reply brief does he raise this argument. As we have already stated, we need not consider arguments raised for the first time in a reply brief. United States v. Cascella, 943 F.3d 1, 8 (1st Cir. 2019).

to numerous MS-13 members who, apparently, did not have the minor-use enhancement applied against them.

This sentencing-disparity claim fails from the outset because Salvador Gutierrez has failed to present appropriate comparators. See United States v. Bishoff, 58 F.4th 18, 25-26 (1st Cir. 2023). Congress has directed sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "To present '[a] well-founded claim of disparity,' a defendant must compare apples to apples." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (alteration in original) (quoting United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005)).

Here, Salvador Gutierrez has done nothing more than present us with a list of defendants that he argues the minor-use enhancement was not applied to. He has not in the least shown that these defendants are relevant comparators. See United States v. Nuñez, 840 F.3d 1, 7 (1st Cir. 2016) ("Merely pointing to a [codefendant]'s sentence, without more, does not prove the existence of an impermissible sentencing disparity."). There is nothing to show that any of these defendants are "identically situated" to Salvador Gutierrez. Reyes-Santiago, 804 F.3d at 467.

Perhaps recognizing that weakness, Salvador Gutierrez pivots from arguing that the minor-use enhancement is applied

arbitrarily and capriciously across all MS-13 defendants, to arguing that one of his confederates did not receive the minor-use enhancement when he did. Specifically, Salvador Gutierrez points to Maynor Maltez Romero, an MS-13 member who was indicted in the first superseding indictment for murdering Rivas. Salvador Gutierrez contends that Maltez Romero did not receive the minor-use enhancement despite his affirmative use of minors. Glaringly fatal to Salvador Gutierrez's claim is the fact that Maltez Romero was a juvenile at the time of the Rivas murder. As such, Salvador Gutierrez's claim is not comparing "apples to apples," Brown, 26 F.4th at 69, because there is a material difference between him and Maltez Romero that "suffice[s] to explain the divergence." Romero, 906 F.3d at 211 (quoting United States v. Demers, 842 F.3d 8, 15 (1st Cir. 2016)).

## III. Conclusion

For the foregoing reasons, we affirm Salvador Gutierrez's sentence.